Good morning, Your Honor. May you please support my name is Ariel Green. I'm here on behalf of the petitioner, Mr. Urie, and I'd like to reserve two minutes for rebuttal. All right. We respectfully submit this case is controlled by Agonifer v. Sessions. And Agonifer, as an Agonifer, at the time of Mr. Urie's removal proceedings, the only evidence of persecution by bisexual people in this area was an unenforced removal statute. As time passed... I'm getting very little volume. I'm not hearing you. Oh, okay. This is Judge Fernandez. I'm not hearing you. Let me try to speak louder. Is that better? Yes, that's better. Okay. So, as an Agonifer, at the time of Mr. Urie's removal proceedings, the only evidence of persecution against bisexual people in Nigeria was an unenforced criminal statute. But as time passed, Nigeria started enforcing that statute, leading to arrest and violent persecution of gay and bisexual people. Under Agonifer, this transformation from a country with no violence to one with rampant violence satisfies the motion to reopen requirements. But even if this was not enough, Mr. Urie showed more. Nigeria didn't just start enforcing dormant laws against LGBT people. It crafted new ones that restrict free association. This, too, is a qualitative change the BIA should not have ignored. Nigeria has changed for the worse. The BIA abused its discretion in ignoring that fact. Mr. Urie doesn't ask this court for ultimate relief, such as asylum or withholding or cap deferral. Rather, he asked for the chance to make his case before the BIA. And we respectfully ask that this court give it to him. So, counsel, the key question here is whether he has shown change country conditions, correct? Yes. And that's done by comparing the prior report with the 2015 report? With all the changes that have occurred, so the 2015 report, but also the changes that have occurred leading up to it. In comparing the two reports, what's the major difference? Is it the passage of the law now? So I think there's two differences. The first one, if you look at AR38, which is the portion of the 2015 report that really discusses this, and if you compare it to AR74, which is the portion of the 2005 report. In the 2005 report, let's start there, all it says is that homosexuality is illegal under federal law. The practices are punishable by 14 years. Under Sharia law, you can be stoned to death, but there's no sentences imposed. Can you say that again? Oh, goodness, sorry. It simply says that homosexuality is illegal, punishable by 14 years in prison, and that under Sharia law, you can be stoned to death for it, but no sentences were imposed. There's no other discussion of violence. There's no discussion of restriction of any free association rights. There's no discussion of arrests or other convictions or lashings or anything like that. If you look at the 2015 country conditions report, by contrast, so yes, you have the new law, which, as then-Secretary of State John Kerry discussed during his passage, contains broad restrictions on free association rights between LGBT people and those that simply support LGBT rights, but in addition to that, you have reports of arrests, such as, for example, it talks about in the last paragraph, arrests of 12 men for attempting to celebrate a gay marriage, two of which have disappeared, meaning they can't find them, it's unknown whether they're alive. And then you also have the same sentences that discuss the illegality of intimate acts between same-sex individuals, and that same sentence, instead of saying there's no sentences, period, under any of these laws, it says individuals convicted of same-sex sexual activity were sentenced to lashing in 2015. And so you have both the enforcement, whereas before there was none, enforcement through violent actions by state actors, and also in previous reports, such as the 2012 report, you have mobs that the police refuse to arrest, that go stoning people or stripping them, taking them out of their houses and parading them naked through the streets, etc. So you have increased violence under existing laws. And then you have the passage of new laws, which the 2015 and also news reports discussed have been enforced through arrests and things like disappearances of those simply trying to celebrate a gay marriage with no intimate sexual act necessarily involved. And so I think that's the primary change. You have both increased violence against LGBT people in a way that is just simply not in the record at the time of Mr. Urey's removal proceeding. And then you also have new restrictions on free association rights. I'm sorry. So I just want to be clear. So you're saying there are actually two separate, you said the change, but you're actually talking about two separate sort of changes categorically. One would be categorical differences between the laws in terms of an expansive regime, a statutory regime regarding punishment. And you're saying that the 2015 report documents increased incidence of violence and persecution. Is that right? Right. And so the second category that you just enumerated, that's what's discussed in Agonfor. In Agonfor in Kenya, sorry, not Kenya, in Ethiopia, you had a situation where at the time of his original removal proceedings, as the Ninth Circuit discussed, there was the potential for imprisonment for the practice of intimate acts between two same-sex individuals. But there was no evidence whatsoever of violence or even enforcement of such laws. By the time he filed his motion to reopen, Mr. Agonfor could show violence. He had two reports, one from a nonprofit organization, the other from the State Department, where he was able to show increased violence against LGBT people in Ethiopia, including making up false crimes against them, putting them in prison and then enacting violence against them. And the court said that alone, that simple going from no enforcement to enforcement was enough to satisfy the motion to reopen requirements. And that alone meant the BIA abused its discretion in ignoring that. Mr. Urey has gone further. In addition to that, you know, in addition to showing people being sentenced to lashing, in addition to showing people getting arrested for simply attending a gay wedding, in addition to showing people being pulled from their homes and paraded in the streets naked by their neighbors with impunity, in addition to showing people that attended an LGBT friendly church, it's not even clear any of these people are LGBT, but they support LGBT rights, being stoned by a mob and the police doing nothing about it. In addition to showing that, he showed a fundamental change in the law such that simply supporting LGBT rights is now illegal. And the police have taken steps to enforce such laws by arresting people. Although the 2015 report says news reports and LGBTI advocates reported numerous arrests, but the detainees were released without formal charges after paying a bond. So it doesn't seem as if they were necessarily convicted. But we do know that two of the men that were arrested for attempting to celebrate a gay marriage were never seen again. And so both of those changes combined show that the BIA abused its discretion. I know you wanted to save a little bit of time. Yeah. Yes, I did. So I'll save it. Thank you. Let's hear from the government. May it please the court. I'm Lindsay Marshall on behalf of the Attorney General. To prevail here today, Mr. Geary carries a heavy burden. He must show that the board abused its discretion in determining that the same-sex marriage Prohibition Act is not a material change for bisexuals in Nigeria, a country that has long outlawed and punished homosexuality. This is a claim that the board rejected previously and that this court upheld on nearly an identical record. As before, he cannot show that the board's decision was irrational because the same-sex marriage Prohibition Act is not materially different, so as to constitute a change of conditions. I'd like to turn first to petitioner's argument that there was an increase in enforcement of the pre-existing laws based on the passage of the same-sex marriage Prohibition Act. Aside from that, this is not an argument that was ever raised to the board. Mr. Geary bases his claim on an argument that this law criminalizing homosexuality was previously dormant and not enforced until the same-sex marriage Prohibition Act came into action. But the key question here is whether there has been a change from the time of his removal proceedings until now. And Mr. Geary has not shown that change. It was his burden to show evidence of the level of enforcement at the time of his removal hearing. Ms. Marshall, I'm sorry, I know it's a little tricky because you're on the phone. Can you talk a little bit about the differences between the two laws? Because they're not the same as it relates to the types of conduct that are criminalized. It does seem to me that there's an expansion under the SSMPA of the types of conduct that would be criminal. So why doesn't that support an argument for change circumstance? Because as the board pointed out, the contrary conditions report explicitly states that this law was not enforced. In fact, the instances that Mr. Geary points to appear to be instances where Nigeria enforced its previously existing law criminalizing homosexuality. I'm sorry, Ms. Marshall. You're saying that notwithstanding the fact that there are going to be differences in the law in terms of it being more expansive, that that's not a change circumstance to the extent that they're not doing any enforcement as it relates to the expansive aspects to the statute itself? Yes, Your Honor. We find support for that position in the board's decision in matter of SIG and in this court's decision in Feng Guilin. In Feng Guilin, the court examined a situation in which the petitioner claimed a fear of returning to China based on the sterilization that China imposed in accordance with its one-child family planning laws. And in that case, she showed evidence that there was sterilization included in the policy. However, the court found that it was not a change because that was part of the policy in the beginning. Here we have essentially no change because we have a law that was banning homosexuality, which has continued to be enforced, but which has parts that are no longer being enforced, or excuse me, that have never been enforced. And in matter of SIG... Let me ask you this, counsel. Could you raise matter of SIG? The BIA in that case indicated that a new report or new law is not evidence of change conditions without convincing evidence that the prior version of the law was different, or was differently enforced in some relevant and material way. So under that reasoning, it seems to me that the passage of this law, which really broadened prohibited conduct to include any support of LGBTQ rights to be materially different. And that's under the reasoning of SYG itself. So why is that not correct? Because at its core, what Mr. Geary claims is a fear of returning to Nigeria as a bisexual man. But that fear isn't tethered to the new law because bisexuality, or more specifically homosexuality, has always been criminalized since even before the time of his removal proceedings. What Mr. Geary was charged to do was provide convincing evidence to the board to prove that there had been a change that would materially affect his fear of living in Nigeria as a bisexual man. And he has not done so. In fact, Mr. Geary has provided very little evidence of the enforcement of the law at the time of his removal proceeding, which again was his burden. Turning to his point about how the law was enforced, Mr. Geary is essentially asking the court to look at the paucity of the evidence that he provided and infer that there was a lack of enforcement. But it was Mr. Geary's burden to prove that change, and it wasn't irrational for the board to conclude that on this record, there was no change. There was no material change. From your perspective, what else would he have to have shown that he didn't show? Because, as you know, in many of these cases, it can be difficult to come by accurate records as it relates to certain types of persecution in other countries. What else do you think that he could have done or should have done that he didn't do? He could have provided evidence relating to whether or how the laws regarding homosexuality were enforced in Nigeria in 2007 when his removal proceedings were. What type of evidence? Are you talking about from an NGO or something like that? That would be helpful. To prove a change of country or to attempt to prove a change of country conditions, Mr. Geary provided several articles from online sources in his previous motions to reopen regarding current conditions or conditions that were current in 2014 when he submitted that material. But he provided nothing relating to earlier enforcement. In fact, the only information he provided about earlier enforcement occurs in 2008. He is asking the board and this court to conclude that there was a change in conditions without ever truly describing what those conditions were. And I don't think that the board was irrational in determining that he did not show that when the earliest evidence that he shows was that there was discrimination in acts against homosexuals. And where the country conditions reports that he provided indicate that the laws were on the book contain no mention that they were not enforced. And when the country conditions information does include reports on its enforcement, they do not indicate in any way that this was a new phenomena. And in this way, the government thinks that Agonifer actually cuts against Mr. Geary. In Agonifer, there was no discussion on the court's part about the enforcement of a pre-existing law. Rather, in Agonifer, it turned out whether there was an increase in violence. At the time of his removal proceedings, the report explicitly stated that there was no violence. But when he moved to reopen his proceedings, reports showed systemic violence on both the part of the government and private citizens. We simply don't have that evidence here. Mr. Geary has not shown that level of exchange. Let me ask you this, counsel. If we think that the passage of the law and the scope of what the law prohibits is substantially different than what was in the 2005 report and what constituted criminal conduct at the time of his removal proceedings. Is that enough to demonstrate change conditions? Or does there have to be a showing of increase in violence? And if your answer is that there has to be some demonstration in the record of an increase in violence, then what case supports that? I don't think that Mr. Geary had to show necessarily increased violence. But I think that he needed to show that the law was different in a material way. And that includes some level of enforcement. So you are saying, you're actually saying in response to Judge Wynn's question, that there has to be some demonstrated difference in enforcement, even if we were to find that the laws themselves were different and that there was an expansion of the types of conduct that was criminalized. I think that if he could show an expansion of criminalization with evidence that it was enforced, yes, that would be a material change. But where he shows a change in the law that doesn't materially affect his prior fear or his long existing fear, which is living in Nigeria as a bisexual man, conduct that has always been criminalized and notwithstanding this change in law. It is very difficult for him to make that showing. Because the change here isn't the core of his fear, which is living as a bisexual man. The change here is to ban it. I guess I really struggled to understand the logic of that argument, because at the time of his removal proceedings, same-sex sexual activity was criminalized per the prior report. Now, there is a law on the books that basically criminalized all public shows of affection, civil unions, any demonstration of support to LGBT causes. Why isn't that a material expansion of criminal conduct that puts him at increased risk? Because as the board said, and as this court has previously affirmed, Mr. Uri's fear is of living as a bisexual man. And the homosexuality has always been criminalized. That is not a change. All right. Thank you. A question has taken you over time. I apologize. No problem. Would you like me to conclude or leave it at that? Please. Please conclude. Certainly. Well, ultimately, Mr. Uri was charged with showing a change in country conditions. And here he levies only the same claim that the board and this court both previously rejected on a nearly identical record. As before, he cannot show the board abuses discretion in holding that the Same-Sex Marriage Prohibition Act represents a material change where it duplicates Nigeria's pre-existing laws. Accordingly, the court should deny the petition for review. Thank you. Thank you, counsel. Ms. Green, you have a couple of minutes of rebuttal time. Thank you. I'll be as brief as I can. So, on the first point, I think the government is misconstruing his motion to reopen. Mr. Uri, on AR-13, he wrote, As a result of this new law, there has been a widespread increase in the pattern and practice of systematic persecution of the LGBT community, perpetrated by private and public officials, such as police officers and the judiciary. You need to speak up again. Oh, I'm sorry. He wrote, As a result of this new law, there has been a widespread increase in the pattern and practice of systematic persecution of the LGBT community, perpetrated by both private and public officials, such as police officers and the judiciary. Thus, Mr. Uri's argument has always been that this new law has served as a catalyst, both before its passage and after its actual passage, for increased persecution of the LGBT community in Nigeria. And as for the government's argument that Mr. Uri must somehow prove a negative about the 2005 proceedings, I'll just point out that this is a new argument. It's not even in their brief. But even if we take it as so, in Agonifer, what the court wrote in the original proceedings was not what the government said. What the court wrote, and this is on page 754 of 467 Federal Appendix, the court wrote, Although there is a potential for imprisonment as a result of homosexual activity, there is no evidence in the record of any violence directed toward homosexuals in Ethiopia, either inside or outside the prison systems. Thus, as is the case here, in our case, there was no evidence of violence. It's not that the report said there's no violence. It says there's no evidence of violence. And in the 2005 report, in our case, as was the case in Agonifer, it doesn't say there's any violence. There's no evidence of violence. There's no evidence of violence in this case. So it's the same thing. As for the new law, as the court pointed out, this is a broad ban on any association with anyone that supports LGBT rights. And as Mr. Uri pointed out in news articles, which you can find at AR-150, for example, and AR-151, numerous people, hard to keep track of the numbers, but over 100 people have been arrested for simply being suspected as being homosexual. And people have been beaten as a result for this when they get arrested by the police. And even the 2015 country conditions report confirms this in the second paragraph on page AR-38, when it discusses LGBTI advocates being arrested simply because of their advocacy work. So I think the fear for Mr. Agonifer, returning to Nigeria, is very real. That he'll be persecuted for who he is. He'll be persecuted for associating with anyone that happens to support him or be kind to him or support his rights to even advocate for change in the law. And this is material change that the BIA ignored, both qualitative differences in terms of how old laws were enforced and qualitative differences in terms of the broad scope of the same-sex marriage prohibition act and the way in which it restricts any associational rights for bisexual people in Nigeria. Thank you very much, counsel, both sides for your argument. And thank you, Ms. Green, for accepting this case on our pro bono appointment. The matter is submitted and we'll issue a decision in due course.
judges: Fernandez, Nguyen, Boulware